Case number 14-7021, Jane Leggett and K.E., a minor, by her parent and ex-friend, Jane Leggett, Appellants v. District of Columbia, a municipal corporation. Ms. Leggett for the appellant, Mr. Schifferle for the appellee. Mr. Schifferle. Good morning. Good morning, Your Honors. Good morning, Ms. Leggett. I am Jane Leggett, appearing pro se today on behalf of my daughter and myself. Appellants here, I would like to reserve six minutes for rebuttal, please. We contend that this Court should reverse the decision below because under any of the legal standards in the cases cited by either side, the Brewer School was a proper placement for my daughter because it provided her special education, as defined by IDEA. It provided her educational benefit, and it was necessary because it was the only placement I could find that could meet her rather unusual combination of needs and would accept her. The undisputed evidence in this case is that District of Columbia Public Schools did not offer an IEP, an Individualized Educational Program, or a placement for my daughter before the beginning of the 2012-2013 school year. I contend that it would have been irresponsible for me as a parent to have placed my daughter back into Wilson High School, where she had failed the previous year. The undisputed evidence is that she had failed the 2011-2012 school year and that for the previous two and a half years, I had been asking, trying to get Wilson High School officials to evaluate my daughter, and they refused. I had to hire attorneys and then file a due process complaint before they would evaluate her. When they did, they found that she was eligible for special education with multiple disabilities, a primary disability of other health impairments from multiple executive dysfunctions, as well as emotional disturbance. Ms. Lake, could you tell us a little bit more about your search within the district for an alternative school? I know you said you found one that you thought was good, but they rejected KE, correct? Yes. Were there others? Yes, there were. May I go beyond the evidence? Yes, go ahead. I'm just curious. Sure. I didn't really begin searching extensively until after the June 14th IEP team meeting when I was told that Wilson High School could offer no more than two inclusion classes for her, so they were not going to be able to meet her needs throughout her day. So it seemed as if what we had been discussing was not going to be an adequate placement. I searched. There are multiple directories of both public and private schools. First, I started looking at D.C. public schools as well as charter schools, seeing if they had learning support programs, some kind of programs, but also looking for a setting that might be more therapeutic and supportive for her. When I didn't find any there, I looked at a number of private schools. Did you want me to name names? No, no, you don't need to name names. And at that point, I also began, a friend of mine had identified a boarding school in New Hampshire some months before, and so at that point when I wasn't finding anything, when I found something, first I learned quickly to look at a website and find out what kinds of programs it offered. Did it accept students with learning disabilities? If so, what kinds of programs did they offer? I would call the admissions officers and explain what I was looking for, and I learned very quickly to note that my daughter had a diagnosis of emotional disturbance and continuing suicidal ideation, and usually that closed the door immediately. The district in its footnote 9 on page 32 cites to a Washingtonian magazine article saying that there were about two dozen schools specifically identified for children with emotional disturbance. Are those the kind of schools that you were looking at in that search that you just described? Well, generally not, because on the IEP team meeting, nobody had felt that she really required a full-time special education placement. I think the general, I mean, maybe it would be necessary if there were nothing else available, but everyone felt that she would be better off learning with non-disabled peers, which is the strong preference of IDEA. The other thing is that in my judgment and in the primary classification of executive dysfunctions, her primary difficulties were with her executive dysfunctions, and it was her continuing struggle over many years without being served that was aggravating her underlying mental health issues, and it created sort of an adverse cycle, and I felt strongly that she needed to begin feeling some success in school before she was going to get past this despair. And so it was necessary that we had her in a school that was also academically appropriate for her. Let me ask you about the remedy. If it were the case that the district court erred in holding that this was not an appropriate placement but that Greer did meet the minimum required by the Act, what are the factors that a court should consider? I mean, I guess the concern is, let me just put it out there, the concern is that if you have a school district that is scrambling to put an IEP in place but doesn't do it on time and gets it in place a couple of months late, and let's just assume by hypothesis that this IEP they put in place is adequate, but it's a couple months late, what follows from that in terms of, does the district then have to pay for the entire school year at the private placement, at the parental placement, or a semester, or does their duty stop at that point? How do you think that should be analyzed as an equitable matter? Well, as an equitable matter, so not in the portion of the Carter approach about whether or not the private placement is proper. Assuming the private placement is proper but that there's some mitigation that might be available where the school district, instead of having to pay for a private placement, could provide the appropriate services in-house. Well, I think that there are a number of important equities that should be taken into account. The first one is, was the school district scrambling to get an IEP in placement in place? That was not the case here. In fact, DCPS was not responding to my or my attorney's multiple communications asking them to reconvene the IEP team meeting. They never responded at all to say, gee, we're really under the gun and this is what we intend to do. Even when we gave them our notice of intent to withdraw, we heard nothing back. What happened at the August 29th meeting? Excuse me? What happened at the August 29th? That was a serious meeting, right, on August 29th? Well, that was the resolution. What happened there? All the record says is it was not resolved, right? Well, there are notes from that meeting. I would say that neither side of us probably agree word for word what was in there. But what happened was we went before, we stayed at our sides of what our perceptions were. We both agreed that the IEP needed to be completed. And so we agreed that it was not complete before the beginning of the school year. The district agreed with you at that point that it was not complete? Oh, yes. There's a statement from the special education coordinator, and she stated that also in her testimony. We agreed to meet as soon as possible to complete the IEP. That was held in a meeting on September 11th, and that was the resolution. So we worked to move forward. Okay. So is there no time at which, I mean, assuming that the district wasn't diligent but did at some point get an IEP in place, is the fact that they were, as you described, nonresponsive and not prompt in doing so, does that disable them from bringing a student back into the school system and require if they can be educated within the public school system that they be so educated? No, I don't think so. And that was never our attitude either. However, with a child such as my daughter who had continuing suicidal ideation, her case needed to be managed very carefully. It was not the case that we could put her someplace, yank her out after two weeks, put her someplace else without appropriate transitions. But my counsel in the hearing talked about actually proposing let's get this IEP finished. We can talk about transitioning her back either to a public school or to a private school, but it needed to be someplace appropriate that could meet her needs. But I would argue then that the remedy is because a parent needs to place her child someplace at the beginning of the school year. It would have been grossly unfair to have left my daughter with no place to go. And I stated in my testimony that I think it would have been actually life-threatening for my daughter to put her back into the same school with no program in place, no necessary supports in place, no emergency plans which we hadn't discussed. Now remind me, did they end up just not finalizing the IEP process, or have they proffered what they say is an adequate IEP with respect to your daughter? Well, from my perspective, they never completed the IEP, and they certainly never proffered a placement which could implement an IEP, any placement at all, and that's what's required to offer a FAPE. They would say that by placing an IEP document in the hearing disclosures, I think although they never actually say that that was an offer of an IEP, I think that that's what's implied by it, but there is no indication to me. It was never given to me or my attorneys except in the disclosures. And have you formally challenged that, its adequacy? Well, I never understood it to be an actual offer. It wasn't sent to me as required by the law. It's incomplete. It contains errors as serious as the hours and duration of services that they were offering, and the special education coordinator stated in her testimony that if the presumptive placement were at Wilson, Wilson could not implement what they had in that document. They didn't ever make an offer of a placement other than Wilson, right? No, nor I don't believe that they have ever contended that they made any kind of an offer. They presumed it, but that's... I mean, your point is even if the paper was completed, the law requires more, and they were not offered a placement anywhere. Right, that's correct. But also I just had no reason to think that that was one because it so does not match what a parent, what the law says a parent should expect. It wasn't until the district court's opinion in January 2014, so well after a year after the hearing, that for the first time it was suggested that I should have challenged that document. And at that point it would have been... Who suggested that? Oh, you mean in the district court opinion? The district court's opinion for the first time suggested that I should have challenged that. And at that point it would have been pointless. The school year in question was well over. I had already filed yet another due process complaint because DCPS refused to develop an IEP and placement for my daughter for the following year, the 2013-2014 school year, and that complaint was dismissed res judicata. Now there's another lawsuit. That's covered by a separate lawsuit. It's misstated, right? Yes. So it was dismissed res judicata. Why? You mean because of the previous hearing? Well, the hearing officer found that DCPS had denied my daughter a FAPE, but it was dismissed res judicata because it refused to develop an IEP and placement. Was that after DCPS claims in the fall that it did develop an IEP? No, it was the subsequent fall. So this complaint, the hearing for this complaint was in fall 2012. In October 2013, a second hearing officer found without a hearing that DCPS denied a FAPE but dismissed the case res judicata because she said that Greer had already been found improper by the first hearing officer and, therefore, that could not be heard again. So another complaint would have been dismissed. I realize it's a different case, but as part of those proceedings, just to continue the question Judge Edwards was asking you, did DCPS produce an IEP at that point? They were ordered by the hearing officer to complete one as soon as possible. You're talking about the 2013? The 2013-2014 school year. Okay, but at the beginning of that school year, did they have an IEP in place? No, they refused to place to develop one saying that I had voluntarily withdrawn my daughter. But they never completed the IEP. Okay, I understand. Thank you. Even under the second hearing officer's order. And the res judicata, that was the hearing officer who so held, but you file a case in district court and that's being held, as I understand it, pending resolution of the state. Yes. Okay. Do you want to save your time or do you have some other things you want to cover? How much more time do I have? Why don't you save some time for her? Why don't you use your 23 seconds and I'll give you a little more time. Okay. Go ahead, if you'd like. I'll just give you a couple minutes, okay? I'll just give you a couple minutes. Good morning. May it please the court. Carl Schifferle for the District of Columbia. This court should affirm the district court for any of three independent reasons. First, there was no denial of a free and appropriate public education that justified a unilateral private placement. Second, the hearing. Do you disagree that under the law, the school district had to have an IEP ready by the beginning of the school year? That was a procedural deadline. I agree, yes. That is correct. The hearing officer said it was not a procedural violation, that it was a substantive violation. Well, we disagree with the hearing officer's analysis. It did treat it as though a procedural violation was a per se denial of a free and appropriate public education. So what's your best – I know you've got a situation here where the hearing officer and the district court both agree that the district denied free and appropriate public education to the child, right? Yes. And you want – so what's your best argument that given our deference to fact finding and everything else, you think this court should overrule that? Because neither found that there was an actual educational deprivation. We just assume that because the IEP was not in place that there was a – What does that mean? What does that mean? I don't understand that. She – under the Act, every child has a right to an appropriate education, correct? Right. And there was none at the beginning – in Wilson at the beginning of the school year, was there? There was no IEP. That is correct. Okay, so explain it to me. I don't understand why this isn't a violation of the statute that triggers the right of the parent to send her child to a private school. Well, there are several responses to that. First, I would point out the CH case from the Third Circuit. That was a case where there was the same procedural violation that an IEP was not in place, but it found that there was no denial of – under the facts of that case. And I think they're somewhat similar to the facts here, which we have to look at, that the private school decision was made well before the procedural violation occurred. By the private school decision by whom? By the parent? By the parent, correct. On August 6th, there was the letter. The letter from the lawyer says she's happy to consider whatever comes out of the IEP. I mean, what choice did she have at that point? The district had answered none of her emails or phone calls, right? Well, no, I think there was a process that was in place that was continuing. There was an evaluation. You think – are you challenging the hearing officer's findings that he found that at the June 14th meeting they promised a summer program, never delivered? He said following the July – following the June 14 meeting, the case manager was supposed to meet with the mother. That meeting did not happen. June 21, she emails the special coordinator, also left a voicemail, no response to either. July 21, lawyer contacts special coordinator to schedule meeting, no response. Are you challenging any of those findings? No, I'm not challenging the findings. I'm asking the court to look at the other findings and what was undisputed. But there was an evaluation that took place that there were two IEP meetings in June before the conclusion of the school year. Admittedly, that there was a lot of progress being made in those meetings, that it was agreed upon that there would be a third meeting at the end of August before the start of the school year in order to complete the process. The process was in place. On August 17th, Ms. Leggett filed an administrative complaint that did not seek the completion of the IEP process. It sought only placement and funding at the Greer School. So we have to consider those facts. Unless either of my colleagues has questions on that, why don't you go on to your second point, which is that even if the district denied fate, we should affirm, right? Yes. Why don't you go on and talk about that? Yes, the hearing officer in the district court was correct that there was the residential placement that was selected by Ms. Leggett was not appropriate. It was not necessary for educational purposes, which is the test. I don't understand that to be the test. I thought the test was whether it's appropriate. Yes, generally speaking, but when it comes to a residential placement, the law of this circuit is clear that it has to be necessary for educational purposes. Are you talking about McKenzie? That's the McKenzie case. I don't read that case to say that any residential placement has to be appropriate. I believe that where there is a non-residential alternative that's proffered that would be appropriate, that for the parent to insist on residential, they would have to show that it was necessary. But in this case, the parents were not looking for a residential placement as such, but looking for an appropriate placement. And sometimes the only place you can find that, especially in the summer or late, is going to be at a residential placement. So isn't the basic standard the minimum standard of is this appropriate? And anything about whether it's too good or too much or too expensive would have to come into the remedy phase. No, I do disagree with that. There are alternatives. If you set aside the IEP process itself, we pointed out that there are several dozen schools, high schools, private high schools with day programs, including two dozen for educational, or excuse me, emotional disturbance. None of which the district investigated and actually proffered as part of an IEP. Well, because the district was implementing an IEP, which involved a public school option. But I'm saying that in order for Ms. Leggett to carry her burden, she has to look at it. But the district acknowledged that Wilson was not a proper placement. No, I disagree with that. There's nothing to suggest, at least as I read the record, that Wilson was adequate to serve the needs of this child. Well, I do have to put in one caveat first before I get to my answer, and that is location, i.e., Wilson versus some other public school, is not the placement. The placement is the type of educational program. I understand. Okay. So we have the type of educational program that was offered here. We had inclusion classes in at least two of the four core academic subjects. There was one district official that agreed in this record that Wilson was not adequate to the test that was needed. No, respectfully, there was no dispute, at least from the district's perspective, that Wilson would have been an appropriate placement or the type of educational program. The way these work, if the district did or was able to do what it was supposed to do, this would have come in a timely manner. The parent's sitting waiting. The child has to be placed. You can't just go willy-nilly. If you have a child who has problems and they're suicidal, you can't just kind of hang around and hope things work out. If the district does it correctly, they're going to come in with the IEP complete, including here's where you should go and the programs are there that address your daughter's needs. That never happened here. Never. Well, Your Honor, if the programs are not in place, as the school district agreed to put in place, then the parent has an immediate administrative remedy, filing an administrative complaint, challenging. The parent doesn't have to wait for disaster. The case does not say the parent has to wait for disaster to occur before the parent can take action. I absolutely agree with that, Your Honor, but we don't have that situation here. Were the programs you're talking to Judge Edwards about in place at the beginning of the school year? Ms. Leggett never sent her child to Wilson. That's not my question. Okay. The IEP you concede was not developed until the fall. So as of the beginning of school, the program you're talking about was not available to her. I disagree. The IEP was mostly complete. The statute says, the statute doesn't say the district's obligation is to have a mostly complete IEP available by the date. It says an IEP. I understand, but we're talking now about the appropriateness. I was simply responding to your answers to Judge Edwards. You're the one, in response to his questions about necessity, who went back to whether or not there was an IEP. It can't be that the place, even if you're right that the test is necessity, and I want to ask you about that because I actually, I'm not sure I agree with that, but even if you're right, the comparison can't be between Greer and a program that didn't exist at Wilson on the beginning of the school year. That can't be the right test. If you had had an IEP in place and Ms. Leggett had put her child in a private school, then you could argue, assuming the standards necessary, it wasn't necessary because it was a program at Wilson. But there wasn't one at Wilson. Okay. I can agree with that general statement, but I have to disagree on the facts here. Go ahead. There's no dispute that Wilson was perfectly prepared, willing, and able to offer two out of four inclusion classes. Well, you assume, for purposes of the discussion here, that since that wasn't available at the beginning of the school year, that it isn't the right comparison. Assume for a minute that's what we think. Assume for a minute that we agree with the district court that there was no IEP in place at that time. Then now make your argument about necessary, and then I have a question for you about whether that's the right standard. Because none of KE's evaluations suggested that a residential placement was proper or appropriate. Greer is not a therapeutic or special education school. Isn't that a good thing, consistent with the statutory priority on less restrictive alternatives? No, just the opposite, Your Honor. Because it's a residential school, it is very restrictive. No, because it's mainstreaming with kids who are not all special emotional needs. That makes it less restrictive. Right, but Wilson would have offered the same thing. In fact, better. I think we've just been over the ground about this not being the appropriate comparison. If I could finish my answer. Two out of four, at least, would have been inclusion classes. That is a general education setting, but with special education teachers in the classroom. Greer could not offer that. In addition, again, DCPS was willing, able, and agreed to provide one class period with a learning specialist per week. Also, 45 minutes per week with a behavioral specialist, a social worker to work on behavioral support. So you have to consider those facts. And getting, because I am talking about Greer as well, is whether it was an appropriate placement in light of the facts that we have here. Greer could not offer those inclusion classes. No special education teachers in her academic classes. No IEPs. It was simply an all-girls boarding school known for its dance and equestrian programs, but did not address in the way that what DCPS was willing to provide those sort of special education needs. It's not ultimately a comparative analysis, as the support said tonight. Let me take you back to your argument that the standard is necessity. And for that you rely on McKenzie, right? Yes, McKenzie is correct. And McKenzie relied on a Third Circuit case, right? Correct. Okay, so I read those cases as dealing with a different provision of the statute. Tell me if you think this is wrong. Cruel, the Third Circuit case, that was about a parent's decision to place a child not in a private school, but in a residential medical facility. The child was severely disabled, had cerebral palsy, it was a 16-year-old with the social skills of a six-month-old, couldn't walk, dress, or eat. And the question was rather 24-hour residential service was needed for the child's education. That was the question there. And in McKenzie it's exactly the same. The question there was psychiatric services. And as I read those cases, they arise under a different provision of the statute, 1412A10B, which is for children placed in private schools by the public agency. That's what those cases are about. And the regulation is a completely different regulation. In this case, we're dealing with subsection C, which is where the parent puts the child in a school, not a medical facility, but a school without the school district's consent. So isn't it just a different set of regulations and statutes that those cases are dealing with? Because that's not the issue here, right? I think there are two things that are similar. First is that, as Your Honor said, the purpose of the residential placement has to be- Wait, wait, wait. I asked you a question about McKenzie and Crew. Yes. I asked you a question about the statutes and the regulations. And my question is am I misreading these cases? Aren't they about a different set of provisions, a set of provisions designed, A, for a situation where the school district makes a placement, and, B, where the placement is for medical purposes? It's a residential medical facility, and the issue there is are those medical resources needed for the child's education? Because if they are, the district has to pay for it. If they aren't, the district doesn't. Yes. So I'm asking you a legal question. Right. I guess I do agree. I do agree. But under Forest Grove, the private- Wait, wait, wait. Let's just take this one step at a time. So you agree with me that McKenzie and Crew will deal with a different statute, right? Correct? Well, a different statutory provision? Yeah, a different part of the statute. Well, because it is the school making, the public school making the placement. Yeah, right. And we're dealing with subsection C, right? Okay. And under subsection C, there's a- First of all, subsection C says that where there's no FAPE, the parent can get reimbursed for private school if the parent does not behave unreasonably. It doesn't say anything about necessity. And the Supreme Court cases that interpret this provision, Raleigh, Burlington, and Carter, they don't say anything about necessity either. They say the standard is it wasn't proper. So shouldn't we be looking at subsection 3 and those three cases to decide whether or not Ms. Leggett's decision here was proper under the Act? Isn't that where we should be looking? I would say McKenzie did involve a parental private placement. But let me address those subsection C. The district court was correct that there was no- the district court did not abuse its discretion in finding that under that subsection, reimbursement was not appropriate. It did analyze the relevant factors. It concluded that the removal of K three weeks before the school year started and before any procedural violation occurred suggested unreasonableness on the part of Ms. Leggett that the school was far from the district. Before we get into that, let me ask you another question or two so you can help me understand the statutory structure here. So if I'm now looking at the proper provision of the statute and these three Supreme Court cases, the standard is whether it's proper, correct? The general standard, yes. Okay. And we know from Raleigh that the standard when the school district makes a placement, is it reasonably calculated to ensure the child- what is that phrase? Reasonably calculated to enable the child to receive educational benefits, right? Correct. That's a standard when the school district does it. Correct. Okay. Can you think of any reason why the standard shouldn't be the same when the parent makes it? Well, I am suggesting that the standard is the same. Because it's a residential placement, the school district would have to show that it was necessary for educational purposes and so would the parent. Okay. So you agree then that the standard we're looking at here under this provision of the statute and these Supreme Court cases is whether the parent's decision- whether Greer was reasonably calculated to enable the child to receive educational benefits, correct? No, I thought I just said that the standard is- well, the standard is necessary for educational benefits and that's because it's a residential placement. The Supreme Court cases didn't involve- Why do you assume residential carries the weight that you're suggesting? You're conflating residential that is medical and psychiatric with residential. Residential can't carry the weight that you're trying to give it. I think it does, respectfully, Your Honor. It may go to the remedy. It may go to the question as to whether the room and board should be covered, but the school can otherwise be appropriate educationally and satisfy the standards that Judge Dale was talking about. You're putting too much weight in the reference to residential, which doesn't make any sense. Well, the weight is in part because of the purpose of the statute, which is least restrictive environment, and a residential school is the most restrictive environment. No, that is not the evidence in this case with respect to this place. Well, as this Court said in the Kirkham case, for example, I think it was talking about- No, with respect to this placement. That was not the evidence with respect to this placement that it was overly restrictive or restrictive in a way that the statute intends to avoid. That is not the evidence. Respectfully, the Kirkham case, I think, discusses residential placements, generally speaking, and that because they are far from home, removed from the family, removed from the community, that they are restrictive by nature. But that doesn't mean in this case that that's carried. But that is the case. In this particular situation, because the Court observed that in the case, they didn't mean to say that every residential placement would be overly restrictive. And that's fine, but then we look at the District Court's discretion here, and I think it did recognize properly it was a relevant factor that this is a school far away from home. It is, for that reason, more restrictive than what DCPS could have provided. It was not a school that was principally for, or even particularly for, kids with emotional disorders or disabilities. Nor is Wilson. I mean, you're missing the point completely. Wilson doesn't offer what you're suggesting either. That's not the point. The point is whether or not there is a school placement. Forget it's a thousand miles away or two blocks away. One question is whether the school that is being suggested or picked by the parent is appropriate to the needs of the child. We're not talking about an education. We're not talking about a residential placement involving psychiatric and medical care. That's a different question entirely under the statute of records. Okay, but then we can look at it under the third reason that I gave, that the District Court still has the discretion to consider that. Wait, wait, wait. Before we go on to the third reason, let's continue with Judge Edwards' question. Maybe it would help if we actually looked at the statute. Do you have it in front of you? Why don't you get it? Maybe this will help us. When in doubt, look at the statute, right? Okay. So subparagraph 2 says that if the parents enroll the child in a public school without the school district consent, right, the court can require reimbursement if the court or hearing officer finds that the agency had not made a free appropriate publication. Now, for purposes of my question, we're going to assume that hasn't happened here, that there's no free appropriate public education. Now, then it goes on and says it gives the reasons why it can be reduced or denied, right? Right. It gives four reasons. And you agree that the first three don't apply here, right? You didn't argue in your brief, at least. So we're only up to the fourth one, which is three. Upon judicial finding of unreasonableness, right? So your answers to me, your answers to Judge Edwards are dealing with that issue. Your position is, as I understand it, if you look at the statute, is that the parents' actions were unreasonable, right? Isn't that what you're arguing? That's what the district court found, yes, and that's our position. And you're arguing that, too. And it's unreasonable, you said, because there wasn't any need for a residential school far away from the city, right? Correct. Okay, so then I'll go back to Judge Edwards' question, which is, did anybody ever consider the possibility that, you know, maybe the residential program was unreasonable, but the program at Greer was a proper program, and that maybe there should have been reimbursement for the educational part of the program but not for the residential part. Did that ever come up? Well, no. The plaintiff never made that claim. Does the district ever do that? Do you look at cases that way? To separate out the room and board? Uh-huh, yeah. No, I'm not aware of a case like that. Again, the plaintiff in this case has made no attempt to separate it out, make some alternative theory. The strategic choice for counsel made at the hearing when even the hearing officer specifically asked, do you want some type of partial reimbursement? His response was, no, we want it all. Why would it be the plaintiff's burden to ask for less? I'm not sure how a child could attend a boarding school in central Pennsylvania with a parent living in D.C. without room and board available. I agree, Your Honor. I think that suggests why the district court, though, didn't abuse its discretion in looking at that. I'm really interested if we were to find that this were an appropriate placement and the district denied a free and appropriate public education. So the first two factors are gone. I'm interested whether you can shed any light on how the courts should think about whether the district has any entitlement or prerogative to limit the payment for a child in this situation. Assume that this is an appropriate placement. What are the factors? I mean, this is a school. It's a whole program. Recreation is covered under the statute if it's appropriate. What are the factors that you would point to to guide a district court in the exercise of its discretion in finding the whole or part of this placement or a placement like this unreasonable? Well, I think the Supreme Court has said that if you look at all relevant factors, one of those factors is expense. I think the Supreme Court specifically mentioned that expense was an issue. I think the other factors to answer Your Honor's question is that the parents' own actions, removing or at least filing administrative complaints before this. I think we've been over that. Did you have anything else to say in response to Judge Pilgrim's question? Well, the other factor. Because you're way over time. We took you over time, but you're way over time. Okay. If I could just complete my answer. The other factor that I haven't talked about is Ms. Leggett's failure to challenge the IEP once it was completed and provided to her and I think the district court. Okay, but that doesn't have anything to do with the 2012 school year, right? That's the 2013 school year. No, Your Honor. That's the 2012 school year because even though the school year started. Was there an IEP? I don't understand that. How could that be? Because at that point there was a perfectly valid option of the IEP and if Ms. Leggett believed that it was inappropriate, she could have challenged that. In her failure to do so, I think this court has to then accept that that IEP was proper and was available to her very early in the school year. Thank you. Thank you. Ms. Leggett, you were out of time, but you can take two minutes if you'd like it. You don't have to take it, but if you would, it's yours. Thank you. Let me first respond to the last point that there was no IEP ever offered to us and what was put into the disclosures had serious errors in it, including what the hours of service would be. The special education coordinator herself admitted that there was no offer of placement. There was no place for me to sign or to say that I accepted or rejected it, so I had no reason to think that they had offered me something that was ripe for challenge. I'd also like to make the point that the district's focus on inclusion classes is a red herring. It is off point. The IEP must be built by law on the needs of the child and not on what the school, the presumed placement, has to offer. And my daughter's needs, as articulated by the neuropsychologist, were that she needed to have small, highly structured, therapeutic classes with a low student-to-teacher ratio throughout her day. And there is nothing that is in that IEP or in what the council has articulated that meets those needs except perhaps that the inclusion classes might have the student-to-teacher ratio, but we don't know anything about the size of those classes, how many other special ed teachers there would be in there. It didn't address such fundamental questions as, what would happen with my daughter when she had another panic attack at school, which she was having? I was unable to have any discussion with them about, their solution was, well, she should go to the hospital. That's not a constructive or effective way. Greer, on the other hand, offered all of those things that we needed. Provided a small, very structured, positive, predictable environment with small classes, a program, the LEAP program, coordinated by a certified special ed teacher who worked with each of her classroom teachers as well as the dorm mothers, the so-called tutors who monitored the study halls at night. She had adult eyes on her around the clock, pretty much. There were always people she could go to if she needed help. And I think that the neuropsychologist in his testimony has a very nice discussion of why it was appropriate. We agree with that. Thank you. Okay, thank you both. The case is submitted. Thank you.
judges: Tatel, Pillard, Edwards